The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KENCO CONSTRUCTION, INC., <br><br> Plaintiff, <br><br> v. <br><br> HARTFORD FIRE INSURANCE COMPANY, <br><br> Defendant. | NO. 2:19-cv-01000-RAJ <br><br> **ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS** |

This matter is before the Court on Defendant's motion for judgment on the pleadings. Dkt. # 14. For the reasons that follow, the Court **GRANTS** the motion. Dkt. # 14.

## I. BACKGROUND

The parties in this action have a lengthy and detailed history. Plaintiff Kenco Construction ("Plaintiff" or "Kenco") was hired by Porter Brothers Construction, Inc. ("Porter") as a subcontractor on a high school construction project for Highline School District (the "District"). In connection with the project, Porter obtained a surety bond from Defendant Hartford Fire Insurance Company ("Hartford" or "Defendant"). The

ORDER – 1

purpose of the bond was to indemnify the District from the claims of unpaid subcontractors and others, if such debts were not fully satisfied by Porter.

Kenco entered into two subcontracts with Porter. Disputes arose between Porter and Kenco regarding Kenco's allegations that Porter failed to pay Kenco progress payments as required under the subcontracts. In 2013, Kenco sued Porter and Hartford in King County Superior Court to recover the disputed progress payments. After a lengthy trial, the jury returned a verdict in favor of Kenco and awarded Kenco the withheld progress payments. Judgment was entered against Hartford on July 12, 2016. Hartford appealed, and on June 11, 2018, the Washington Court of Appeals affirmed the verdict and final judgment.

Following the appeal, Kenco alleges that Hartford made several "low-ball" settlement offers, which Kenco rejected. On July 2, 2018, Hartford sought reconsideration of the Court of Appeals decision, which was denied. After the Court of Appeals rejected Hartford's motion for reconsideration, Kenco alleges that Hartford continued to refuse to tender payment. As a result, on August 3, 2018, Kenco informed Hartford of its intent to assert claims for damages related to Hartford's "continued unfair claims settlement practices." Approximately two weeks later, Hartford tendered payment to Kenco, satisfying the final judgment and associated fees and costs.

Kenco now brings suit against Hartford alleging extracontractual claims for bad faith and violations of the Washington Consumer Protection Act ("CPA") and the Insurance Fair Conduct Act ("IFCA"). Hartford moves for judgment on the pleadings under Fed. R. Civ. P. 12(c). Dkt. # 14.

## II. LEGAL STANDARD

"Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1990). The standard applied on a Rule 12(c)

ORDER – 2

motion is essentially the same as that applied on a Rule 12(b)(6) motion for failure to state a claim: "the allegations of the non-moving party must be accepted as true, while the allegations of the moving party which have been denied are assumed to be false." *Id*. The Court is not required to accept as true legal conclusions or formulaic recitations of the elements of a cause of action unsupported by alleged facts. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When considering a motion for judgment on the pleadings, a court may consider material which is properly submitted as part of the complaint without converting the motion into a motion for summary judgment. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

### III. DISCUSSION

#### A. Standing

Hartford argues that Kenco lacks standing to bring its bad faith or CPA claims because it is a third-party claimant to the surety bond. Dkt. # 14 at 7. Payment bonds, such as the one at issue in this case, create a tripartite contractual relationship between the surety, principal (contractor), and obligee (project owner). *Colorado Structures, Inc. v. Ins. Co. of the W.*, 161 Wn.2d 577, 628 (2007). The surety provides a bond to the principal for the benefit of the obligee. In this case, Hartford (the surety) provided a bond to Porter (the principal) for the benefit of Highline School District (the obligee). Hartford's obligations under the bond also included payment of subcontractor claims. Dkt. # 15, Ex. A. Specifically, the bond provides:

> The Contractor [Porter] and Surety [Hartford] hereby jointly and severally agree with the School District that every Claimant who has not been paid in full before the expiration of a period of ninety (90) days after the date on which the last of such Claimant's work or labor was done or performed, or materials or equipment were furnished by such Claimant, may sue on this bond for the use of such Claimant, prosecute the suit to final judgment for such sum or sums as may be justly due Claimant and permitted under statute, and have execution thereon. The School District shall not be liable for the payment of any costs of expenses of such suit.

ORDER – 3

Dkt. # 15, Ex. A at 2, ¶ 3. Kenco, as a subcontractor, is a bond claimant and entitled to sue on the bond for payment, which was basis for the previous state court litigation.

### i. Bad Faith

The question of whether a bond claimant can sue a surety for tortious bad faith conduct, however, has yet to be considered by the Washington courts. As a result, the court must "use its own best judgment in predicting" what the Washington Supreme Court would decide. *See Amfac Mortgage Corp. v. Arizona Mall of Tempe, Inc.,* 583 F.2d 426, 434–5 (9th Cir. 1978). Hartford relies on the Washington Supreme Court's decision in *Tank v. State Farm*, to support its argument that such actions are not permissible under Washington law. *Tank v. State Farm Fire & Cas. Co.*, 105 Wn.2d 381, 385 (1986).

In *Tank*, the Washington Supreme Court considered whether a third-party claimant (Walker), who was injured as a result of the insured's (Tank) intentional tort was able to bring a bad faith claim against Tank's insurer, State Farm. *Tank*, at 392. The lower court dismissed Walker's claim, holding that an action for breach of good faith against an insurer is limited to the insured. The Washington Supreme Court affirmed, holding that a third-party does not have standing to sue an insurance company directly for an alleged breach of the duty of good faith under a liability policy. *Tank*, at 392. Specifically, the Court held:

> The duty to act in good faith or liability for acting in bad faith generally refers to the same obligation . . . That source is the *fiduciary relationship existing between the insurer and insured*. Such a relationship exists not only as a result of the contract between insurer and insured, but because of the high stakes involved for both parties to an insurance contract and the elevated level of trust underlying insureds' dependence on their insurers.

*Id.* at 385. (internal citations omitted) (emphasis added).

This decision has been applied by other courts. In *Dussault ex rel. Walker-Van Buren v. Am. Int'l Grp., Inc.,* a seven-year old girl was injured in a car accident and sued

the City of Everett over a lack of curb extensions and red striping along the curb. Although she reached a settlement with the city, the city's insurer refused to pay. The court held that the plaintiff was barred from suing the insurer for breach of duty of good faith because under *Tank*, an action for breach of good faith against insurer was limited to the insured. *Dussault,* 123 Wash. App. 863, 867 (2004).

Based on *Tank* and its progeny, the key question before the Court is whether Kenco is a "third-party claimant" under the surety bond. Hartford contends that Kenco is clearly a third-party claimant because it is not a signatory to the bond. Dkt. # 14 at 8. Kenco argues that it is not a third-party claimant but rather a direct first-party claimant. Kenco relies heavily on the Washington Supreme Court's decision in *Colorado Structures* to support its claim that bond claimants are entitled to pursue bad faith claims against sureties. In *Colorado Structures,* the Washington Supreme Court considered whether a general contractor obligee was entitled to recover *Olympic Steamship* attorney's fees against the surety. *Colorado Structures, Inc. v. Ins. Co. of the W.*, 161 Wn.2d 577, 603 (2007). The Court determined that the obligee was entitled to *Olympic Steamship* attorney fees in connection with litigating its bond claim, emphasizing the "disparity of bargaining power" between a surety and obligee. *Id.* at 603 ("The disparity of power between surety and obligee is, with respect to compulsion of performance, identical to the disparity between insurers and the insured.").

Kenco reads the Court's decision broadly, arguing that under *Colorado Structures* sureties are equally liable to bond claimants for bad faith. But Kenco's interpretation goes well beyond the Court's decision. In fact, the Court explicitly distinguished a California Supreme Court case in which the California court declined to expose sureties to tort remedies. *Colorado Structures,* at 599 ("The issue in *Cates* was whether the trial court properly recognized tort remedies for breach of the covenant of good faith and fair dealing in the context of performance bonds . . . *Cates* concerns itself with the line between contract and tort; it says nothing about whether attorney fees should be

ORDER – 5

awarded."). In *Colorado Structures*, the Court did not consider whether the surety was liable for bad faith tort remedies. *Id.* at 603 ("This case gives us no occasion to consider whether tort remedies should be available."). The Court's decision was limited to whether the obligee was entitled to *Olympic Steamship* attorney's fees.

Even if *Colorado Structures* could be interpreted to hold sureties liable to obligees for bad faith, the question before the Court is far more limited. The Court need not consider whether Highline School District as the obligee under the policy has a right to bring a bad faith claim. The Court must only determine whether Kenco as a bond claimant has standing to bring such a claim.

Other out-of-state courts have taken competing positions on this issue. Several courts have held that a subcontractor is permitted to bring a bad faith claim against a surety insurer. *See, e.g. U.S. ex rel. Don Siegel Const. Co. v. Atul Const. Co.,* 85 F. Supp. 2d 414, 418 (D.N.J. 2000) (holding subcontractor had standing to assert bad faith claim against surety for delay in responding to subcontractor's claim on the payment bond); *K-W Industries, a Div. of Associated Technologies, Ltd. V. National Surety Corporation*, 754 P.2d 502 (Mont. 1988) (same); *Szarkowski v. Reliance Ins. Co*., 404 N.W.2d 502, 505-06 (N.D. 1987) (same). Other courts have held that subcontractors do not have standing to bring bad faith claims under surety bonds. *See, e.g. U.S. for Benefit & Use of Ehmcke Sheet Metal Works v. Wausau Ins. Companies*, 755 F. Supp. 906, 911 (E.D. Cal. 1991) (holding subcontractor did not have standing to sue surety for bad faith); *Trans Ocean Container Corp. v. Intercargo Ins. Co.,* No. C 95-2187 FMS, 1995 WL 870958, at *4 (N.D. Cal. Dec. 20, 1995) (same).

On balance, the Court believes that the Washington Supreme Court would not permit a cause of action by Kenco against Hartford for bad faith. Although Kenco has a right to pursue payment under the bond, this does not create a fiduciary relationship between Kenco and Hartford, as is required under *Tank*. In addition, to hold otherwise could create a conflict of interest for Hartford. "The surety owes the party who obtained

the bond a duty of good faith and fair dealing. If the surety may also be liable to a third party for bad faith, then it may be forced to compromise the duty to one to fulfill the duty to the other." *Ehmcke,* at 911 (internal citations omitted). Finally, as noted by the *Tank* Court, such a claim would not be in the public interest:

> In foreclosing the right of third party claimants to sue insurers for breach of their statutory duty of good faith, we are persuaded that the public as a whole would not benefit from allowing such suits. The goal of the insurance regulations is a well-regulated insurance industry. To this end, the Insurance Commissioner, not a third party claimant, should have the primary enforcement right.

*Tank* at 393-95. Because the Court concludes that Kenco lacks standing, Hartford's motion for judgment on the pleadings as to Kenco's bad faith claim is GRANTED.

           ii. CPA

The same standing issues apply to Kenco's CPA claim. It is well established that insureds may bring private actions against insurers for breach of the duty of good faith under the CPA. *Tank*, 105 Wash. 2d at 394. A breach of the insurer's duty of good faith constitutes a *per se* CPA violation. *Id.* Under Washington law, only an insured can bring a *per se* CPA claim. *Transamerica Title Ins. Co. v. Johnson,* 103 Wash.2d 409, 418, 693 P.2d 697 (1985). For the same reasons that Kenco's bad faith claim fails, Kenco's *per se* CPA claim also fails. Kenco, as a bond claimant, does not have standing to assert a *per se* CPA violation. *See Tank* at 394.

However, the *Tank* Court expressly excluded non-*per se* violations from its analysis. Kenco now argues that its CPA claim also asserts a non-*per se* violation based on Hartford's "collusion with its own bond principal to dissuade enforcement." Dkt. # 18 at 20. This is hardly clear from the complaint. Kenco's CPA allegation is largely a conclusory recitation of the legal elements of a CPA violation. Dkt. # 1-1 at ¶¶ 6.1-6.5. It is not evident from the complaint what alleged misconduct Kenco is relying upon to support a CPA violation. As such, the Court is unable to determine whether Kenco is

stating a *per se* or non-*per se* violation. Accordingly, Hartford's motion for judgment on the pleadings as to this cause of action is GRANTED. However, to the extent that Kenco believes it can sufficiently plead a non-*per se* violation of the CPA, the Court will grant Kenco leave to do so.

**B. IFCA**

Hartford next moves for judgment on the pleadings on Kenco's claim under the Insurance Fair Conduct Act. Dkt. # 14 at 13. Under RCW 48.30.015:

> Any first party claimant to a policy of insurance who is unreasonably denied a claim for coverage or payment of benefits by an insurer may bring an action in the superior court of this state to recover the actual damages sustained, together with the costs of the action, including reasonable attorneys' fees and litigation costs . . .

Kenco alleges that Hartford violated the IFCA when it failed to "effectuate prompt and fair resolution of Kenco's bond claim . . ." Dkt. # 1-1 at ¶ 5.2.

Kenco's IFCA claim fails to meet the core statutory requirements. The IFCA provides a cause of action for claimants who are "*unreasonably denied* a claim for coverage or payment." RCW 48.30.015 (emphasis added). Here, the Complaint does not allege that Hartford *denied* a claim for coverage or payment. *See* Dkt. # 1-1 at ¶ 5.2. Instead, it appears Hartford satisfied Kenco's claim in August 2018 when it tendered payment in satisfaction of the final judgment. Even assuming Hartford unreasonably delayed in paying the disputed claim, this is insufficient to state a claim under the IFCA.

Several courts in this district have similarly held that an IFCA claim cannot survive "where the insurer has fulfilled the claimant's entire demand." *See, e.g. Smith v. State Farm Mut. Auto. Ins. Co.,* No. C12-1505-JCC, 2013 WL 12107577, at *3 (W.D. Wash. Jan. 29, 2013); *Hann v. Metropolitan Cas. Ins. Co.*, No. C12-50310-RJB, 2012 WL 3098711, at *2 (W.D. Wash. July 30, 2012) (finding no "denial" of payment where insurer paid full policy limit following trial, despite three-year delay between initial claim and resolution of suit.); *Neyens v. Am. Family Mutual Ins. Co*., No. C12-1038,

2012 WL 5499870, at *3 (W.D. Wash. Nov. 13, 2012) (dismissing IFCA claim, despite the 19 month delay, because insurer ultimately paid claim after finding of liability and damages); *Country Preferred Ins. Co. v. Hurless*, No. C11-1349-RSM, 2012 WL 4127727, at *4 (W.D. Wash. Sept. 19, 2012) ("The fact that Country did not pay this amount sooner does not establish a "denial of payment" but rather a delay which was caused by a dispute between the parties over the amount of [plaintiff's] wage loss…."). Because Hartford paid Kenco in full, Kenco's IFCA claim fails. Accordingly, Hartford's motion is GRANTED as to this cause of action.

## C. Res Judicata[1]

In Washington, "[f]iling two separate lawsuits based on the same event—claim splitting—is precluded[.]" *Landry v. Luscher,* 95 Wash. App. 779, 780 (1999). Hartford argues that Kenco's claims are barred by the doctrine of *res judicata*. Application of *res judicata* under Washington law requires identity between a prior judgment and a subsequent action as to (1) persons and parties, (2) causes of action, (3) subject matter, and (4) the quality of persons for or against whom the claim is made. *Loveridge v. Fred Meyer, Inc.*, 125 Wash. 2d 759, 763 (1995). *Res judicata* also requires a final judgment on the merits. *Id.*

Here, factors one, three, and four weigh in favor of preclusion. The only question is whether there is an identity of "causes of action." To determine whether there is a concurrence of identity between causes of action, Washington courts consider the following factors:

> (1) [W]hether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether

---

[1] Although Kenco's bad faith and IFCA claims fail as a matter of law, because the Court is granting Kenco leave to amend, the Court will address Hartford's remaining preclusion and statute of limitations arguments with respect to Kenco's CPA claim.

ORDER – 9

the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts.

*Rains v. State*, 100 Wash.2d 660 (Wash. 1983) (en banc) (internal citation omitted). "*Res judicata* acts to prevent relitigation of claims that were or should have been decided among the parties in an earlier proceeding." *Norris v. Norris*, 95 Wash. 2d 124, 130 (1980).

Here, the Court agrees with Hartford that any claims based on alleged conduct occurring prior to the jury verdict and final judgment could, and should, have been brought in the original state court action and Kenco is precluded from doing so now. *See Smith v. State Farm Mut. Auto. Ins. Co.*, No. C12-1505-JCC, 2013 WL 1499265, at *7 (W.D. Wash. Apr. 11, 2013). However, Kenco alleges that its current claims are based on *post-*judgment conduct that could not have been brought previously. Dkt. # 18 at 22 ("Kenco's factual allegations are substantially different than these first party auto claim cases because the entry of judgment preceded Hartford's actionable conduct."). This is somewhat inconsistent with Kenco's complaint which includes multiple allegations of conduct occurring prior to, and throughout, the state court litigation. Dkt. # 1-1 at ¶¶ 3.15-3.18, 4.2-4.3. These are issues that could easily have been raised during the underlying state court action. As such, any claims based on this earlier conduct are precluded.

However, the complaint does allege some conduct that arguably would have been impossible for Kenco to raise during the previous litigation. *See* Dkt. # 1-1 at ¶¶ 3.21-3.28. Under the doctrine of *res judicata,* only issues that "might have been raised and determined [in the prior action] are precluded." *Zweber v. State Farm Mut. Auto. Ins. Co.*, 39 F. Supp. 3d 1161 (W.D. Wash. 2014). Accordingly, to the extent that Kenco's non-*per se* CPA claim is based on conduct occurring after the verdict and final judgment, that claim is not precluded.

### D. Statute of Limitations

The parties agree that a four-year statute of limitations governs Kenco's CPA claim. Instead, the dispute arises over when the claim accrued. "The statute of

limitations time period generally runs from the time an action has accrued." *Malnar v. Carlson*, 128 Wn.2d 521, 529 (1996) (internal citation omitted). "[U]nder Washington's discovery rule, a cause of action does not accrue until a party knew or should have known the essential elements of the cause of action - duty, breach, causation, and damages." *Green v. A.P.C.,* 136 Wn.2d 87, 95 (1998) (internal citation omitted).

Hartford argues that Kenco's claims are barred by the applicable statute of limitations because they all stem from Hartford's denial of coverage which began in 2013. Dkt. # 14 at 16. Kenco counters that its claims are not related to Hartford's initial investigation and denial of its bond claim, but rather, its unreasonable delay in tendering payment of the final judgment after the jury verdict. Dkt. # 18 at 22. As discussed above, Kenco's position is not entirely supported by the complaint which includes repeated references to earlier conduct. *See supra,* at 10-11. However, to the extent that Kenco's remaining non-*per se* CPA claim is based on alleged misconduct occurring after July 12, 2016, such a claim is not barred by the statute of limitations.

## IV. CONCLUSION

For the reasons stated above, Hartford's motion is **GRANTED**. Dkt. # 14. Kenco's complaint is **DISMISSED** without prejudice. Kenco shall have **14 (fourteen) days** from the date of this Order to file an amended pleading or the Court will dismiss this action.

DATED this 24th day of March, 2020.

_____

*[signature: Richard A. Jones]*

_____

The Honorable Richard A. Jones
United States District Judge